**FEDERAL MARITIME COMMISSION,**
Petitioner,

v.

**NEW YORK TERMINAL CONFERENCE**
et al., Respondents.

Misc. No. 18–304.

United States District Court
S. D. New York.

Dec. 1, 1966.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, H. B. Mutter, Asst. Sol., Joseph F. Kelly, Jr., Attorney, Federal Maritime Commission, Washington, D. C., and Gilbert S. Fleischer, Attorney, Admiralty & Shipping Section Department of Justice, New York City, for petitioner.

Burlingham, Underwood, Barron, Wright & White, New York City, for respondent, New York Terminal Conference; Elkan Turk, Jr., New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for respondent, United States Lines Co.; Elmer C. Maddy, New York City, of counsel.

LEVET, District Judge.

By order to show cause, dated August 26, 1966, the Federal Maritime Commission submitted a petition of said Commission to enforce certain subpoenas theretofore served upon the New York Terminal Conference and certain of its members and upon United States Lines Company and issued in a certain proceeding entitled, "Empire State Highway Transportation Association, Inc. v. American Export Lines, Inc., et al., Docket No. 65–39 and Truck Loading and Unloading Rates at New York Harbor, Docket No. 65–46."

## THE BACKGROUND OF PROCEEDINGS

The petition sets forth the following:

1. The Federal Maritime Commission is an agency of the United States, responsible, among other things, for regulating the shipping and related industries pursuant to the Shipping Act, 1916 (46 U.S.C. § 801 et seq). (Par. II)

2. On October 5, 1965, Empire State Highway Transportation Association, Inc. (hereinafter "Empire State") filed a complaint with the Federal Maritime Commission pursuant to the provisions of Section 22 of the Shipping Act, 1916 (46 U.S.C. § 821) against named respondents herein alleging, inter alia, that said respondents were violating Sections 15 and 17 of the Shipping Act, 1916 (46 U.S.C.

§§ 814 and 816). (A copy of the complaint was attached and marked as Exhibit A.) (Par. III)

3. Thereafter, the Federal Maritime Commission, pursuant to said Section 22 of the Shipping Act, 1916, instituted a proceeding entitled, "Empire State Highway Transportation, Inc. v. American Export Lines, Inc., et al., Docket No. 65–39," to adjudicate the issues therein presented. (Par. IV)

4. On December 14, 1965 the Federal Maritime Commission on its own initiative, pursuant to Section 22 of the Shipping Act aforesaid, instituted an investigation to determine, inter alia, whether named respondents were violating Sections 15, 16 and 17 of the Shipping Act, 1916 (46 U.S.C. §§ 814, 815 and 816). (A copy of the Order of Investigation entitled, "Truck Loading and Unloading at New York Harbor, Docket No. 65–46" as amended was attached thereto and marked as Exhibit B.) (Par. V)

5. On the motion of the Federal Maritime Commission counsel, the proceeding in Dockets No. 65–39 and 65–46 were consolidated upon the representations that matters of common interest were involved. (Par. VI)

6. Individual respondents herein are common carriers by water operating in the commerce of the United States or are engaged in the business of furnishing wharfage, dock, warehouse, and other terminal facilities or services in connection with common carriers by water. (Par. VII)

7. Respondent, New York Terminal Conference, operates under and by virtue of an agreement (No. 8005) approved and sanctioned by the Federal Maritime Commission under authority of Section 15 of the Shipping Act, 1916 (46 U.S.C. § 814). (Par. VIII)

8. Pursuant to the Federal Maritime Commission Rules of Practice and Procedure (46 CFR 502.131) on the application of complainant, Empire State, and Federal Maritime Commission counsel subpoenas were regularly made and duly issued to and upon the respondents calling for the production of documentary evidence in the consolidated proceedings. (Par. IX, marked "IV")

9. Motions to quash the subpoenas were filed with the hearing examiner, who subsequently denied said motions. (A copy of the ruling was attached, marked as Exhibit C.) (Par. X)

10. By further order of the hearing examiner, the subpoenas were made returnable at a hearing on August 24, 1966, whereupon the respondents failed and refused to comply with the subpoenas in any respect. (Par. XI)

11. The petitioner, Federal Maritime Commission, seeks enforcement of the subpoenas issued on the application of its hearing counsel, who is charged with the representation of the public interest pursuant to the Federal Maritime Commission Rules of Practice and Procedure (46 CFR 502.42). (A copy of the subpoenas served upon each of the respondents was attached and marked as Exhibit D.) (Par. XII)

The petition also alleges that noncompliance with the subpoenas adversely affects the adjudicatory responsibilities of the Federal Maritime Commission and prevents the complainant, Empire State, from producing evidence in its complaint case and, therefore, the Commission seeks the aid of this court for enforcement of the subpoenas. (Par. XIII)

## DISCUSSION

Respondent, New York Terminal Conference (hereinafter "Conference"), in its memorandum in opposition to the petition, and respondent, United States Lines Company, in its answering affidavit and memorandum, acknowledge the Commission's authority to administer the provisions of the Shipping Act of 1916 (Par. II of petition), and they admit issuance of the subpoenas (Par. IX, marked "IV"), denial of the motion to quash by the hearing examiner (Par. X), and their own refusal to comply with the subpoenas (Par. XI). Respondents concede that they are common carriers or within the term "other person subject to" the Shipping Act under Section 1, 46 U.S.C. § 801.

(Par. VII) Respondents then raise certain issues and defenses, as follows:

1. Both respondents contend that the inquiry which the Commission has started is beyond its power and that any subpoena in aid of it is invalid.

2. Both further contend that the information subpoenaed is irrelevant to any inquiry within the power of the Commission.

3. (a) Both contend that the documentary evidence is confidential and privileged business information; and

(b) The Conference contends that Item 4 of the subpoena is meaningless and void as worded.

4. United States Lines contends that the procedure of the Commission in issuing its subpoenas violates the Administrative Procedure Act and denies them a fair hearing under the Fifth Amendment of the Constitution.

5. The Conference contends that the court has no jurisdiction in the enforcement proceeding (a) because it was not initiated by a summons and complaint, and (b) because the Commission has not authorized it.

I consider these contentions in the order stated.

## I.

The investigation undertaken by the Commission is proper. Respondents claim that the proceedings before the Commission in which the subpoenas were issued is directed solely to prescription of just and reasonable rates for truck loading and unloading, that is, a limitation on respondents' profits. To prove this objective, respondents point to the Commission's order initiating the proceedings and to statements by the hearing counsel and the hearing examiner at the agency hearing on the motions to quash. They further contend that the Commission has no power to control the reasonableness of such rates and that charging unreasonable rates is not a violation of the Shipping Act within the meaning of Section 22, 46 U.S.C. § 821.

■ The Federal Maritime Commission is an independent regulatory agency having, among other powers, primary jurisdiction and responsibility to obtain and enforce compliance with the provisions of the Shipping Act of 1916. United States Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 220, 86 S.Ct. 781, 15 L.Ed. 2d 709 (1966).

A complaint proceeding under Section 22, 46 U.S.C. § 821 is deemed to be one way of supervising Conference activities. Ludlow Corporation v. DeSmedt, 249 F.Supp. 496 (S.D.N.Y., Ryan, Chief Judge) aff'd sub nom. Federal Maritime Commission v. DeSmedt, 366 F.2d 464 (2nd Cir. 1966).

■ Granting that the Shipping Act gives the Commission the power to prescribe just and reasonable rates, in haec verba, only with regard to carriers, Section 18, 46 U.S.C. § 817, this does not preclude the regulation of rates charged by other persons subject to the Act under other provisions. Rates charged by the Conference are expressly made subject to Commission review by Section 15, 46 U.S.C. § 814, and the rates of individual carriers may be discriminatory under Section 16 First, 46 U.S.C. § 815 First, or may constitute unreasonable practices under Section 17, 46 U.S.C. § 816. State of California v. United States, 320 U.S. 577, 64 S.Ct. 352, 88 L.Ed. 322 (1944). The order of the Commission duly alleges such violations and the investigation of them is thus proper under Section 22 of the Act.

## II.

The information subpoenaed is relevant to the proceeding presently before the Commission which, as shown above, is within its power, so the subpoenas are valid under United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950), and Federal Maritime

Commission v. Caragher, 364 F.2d 709 (2nd Cir. 1966).

██ Under Section 15, the Commission is inquiring whether the rates set by the Conference agreement are "unjustly discriminatory or unfair as between carriers, shippers, exporters, importers, or ports, or between exporters from the United States and their foreign competitors, cr * * * operate to the detriment of the commerce of the United States, or [are] contrary to the public interest * * *." As the respondents argue, these standards "relate to the impact of the respondents' activities upon third parties" (Memorandum of Respondent, Conference, p. 6), but their rates do have such an impact. The relation of their costs to the rates is material since high rates are clearly detrimental to American commerce, but profits set so low as to stifle investment in this vital field would also be contrary to the public interest. Control over rates under this section is a necessary quid pro quo for the insulation it gives from competitive pressures. Cf. Ludlow Corp. v. DeSmedt, 249 F.Supp. at 502.

The documents and records sought are, therefore, relevant to the statutory standards.

██ Under Section 16, the Commission is inquiring whether the rates subject the Port of New York to undue or unreasonable prejudice or disadvantage in competing with other ports. Whatever competitive disadvantage they may impose could hardly be deemed undue or unreasonable if the rates are justified by costs. Thus, the cost data is material to that point.

██ Under Section 17, the Commission is inquiring whether the rates constitute unjust and unreasonable regulations and practices. As noted above, State of California v. United States, supra, held that the setting of rates is a "practice" within the meaning of this section. There is no substantial distinction, in logic or policy, between not charging, charging too much, or charging too little, nor is discrimination the only

grounds for finding unreasonableness, although that was the ground in State of California v. United States, supra. Costs are certainly one factor in determining reasonableness of charges, and so the information subpoenaed is also relevant under this section.

### III.

██ Basically, the concern of respondents in respect to disclosure of confidential records must be weighed with the public interest—the price of doing business as a public type of enterprise. The private interests of respondents are insufficient grounds to deny governmental access to their records, and in a case such as this the public interest in regulation may outweigh the public interest in fostering competition. I believe it is a function of the hearing examiner rather than of this court to determine specific questions of this character and to make appropriate modifications. See 46 CFR 502.167 (in camera treatment); Federal Maritime Commission v. Transoceanic Terminal Corp., 252 F.Supp. 743 (N.D.Ill.1966); Oklahoma Press Publishing Company v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Cf. Shipping Act, Section 20, as amended, 46 U.S.C. § 819.

I have examined the list of papers demanded by the subpoena. The question of burdensomeness was thoroughly canvassed in the report of Edward C. Johnson, Presiding Examiner, dated June 21, 1966, Ex. C., attached to petition. I agree with his conclusions.

### IV.

██ The contention that the Commission's subpoena practice under 46 CFR § 502.131 is contrary to the Administrative Procedure Act cannot stand. At the time the subpoenas in question were issued, the Act provided for a hearing on the relevance and reasonableness of subpoenas before they were issued "as required by rules of procedure." (Emphasis added) 60 Stat. 240 (1946), 5 U.S.C. § 1005(c). This last phrase could have meant "when required" or "in the manner required." On September 6, 1966,

Title 5 of the United States Code was enacted into positive law and the new Act reads, *"when* required." (Emphasis added) 5 U.S.C. § 555(d) (1966). This amendment seems intended to clarify the law, not to change it, and so I shall construe "as" in the former version to mean "when." *It would be an exercise in* futility to hold the procedure void under the old law when it could be used to return the case to court immediately under the new law.

## V.

■ (a) The first jurisdictional objection by the Conference is that the proceeding was not initiated by a summons and complaint as required by Rules 3 and 7 of the Federal Rules of Civil Procedure. This objection is well answered in Federal Maritime Commission v. Transoceanic Terminal Corp., 252 F.Supp. 743 (N.D.Ill.1966). Under Rule 81(a) (3) the court may order a variance to the rules in proceedings to enforce administrative subpoenas. Summary proceedings initiated by order to show cause have been traditional for that purpose, and they seem appropriate and fair.

■ (b) It is further suggested by the Conference, under Rule 12(h) of the Federal Rules of Civil Procedure, that this court has no jurisdiction over the enforcement proceeding because it was not initiated "on application by the Commission" as required by Section 27 of the Shipping Act, 46 U.S.C. § 826. The contention is without merit.

The Judicial Code gives the district courts jurisdiction over "civil actions, suits or proceedings" commenced by any agency or officer of the federal government expressly authorized to sue by act of Congress. 28 U.S.C. § 1345.

The Federal Maritime Commission is expressly authorized to sue to enforce the subpoenas which it issues by Sections 27 and 29 of the Shipping Act, 46 U.S.C. §§ 826, 828. These sections are as follows:

"§ 826. Attendance of witnesses and production of books and papers

"For the purpose of investigating alleged violations of this chapter, the Federal Maritime Board may by subpoena compel the attendance of witnesses and the production of books, papers, documents, and other evidence from any place in the United States at any designated place of hearing. Subpoenas may be signed by any member of the Board, and oaths or affirmations may be administered, witnesses examined, and evidence received by any member or examiner, or, under the direction of the Board, by any person authorized under the laws of the United States or of any State, Territory, District, or possession thereof to administer caths. Persons so acting under the direction of the Board and witnesses shall, unless employees of the Board, be entitled to the same fees and mileage as in the courts of the United States. Obedience to any such subpoena shall, on application by the Board, be enforced as are orders of the Board other than for the payment of money."

"§ 828. Enforcement of orders of Board

"In case of violation of any order of the Federal Maritime Board, other than an order for the payment of money, the Board, or any party injured by such violation, or the Attorney General, may apply to a district court having jurisdiction of the parties; and if, after hearing, the court determines that the order was regularly made and duly issued, it shall enforce obedience thereto by a writ of injunction or other proper process, mandatory or otherwise."

In Federal Maritime Commission v. DeSmedt, 366 F.2d 464 (2nd Cir. 1966), Friendly, Circuit Judge, wrote in part:

"As recognized in *Caragher,* § 27 of the Shipping Act of 1916 derived from the pioneer and at that time only federal statute regulating carriers, the Interstate Commerce Act. [footnote omitted] Section 12 of that statute as originally enacted empowered the ICC 'for the purposes of this act' to 'require the attendance and testimony of witnesses and the production of all books, papers, tariffs, contracts, agree-

ments, and documents relating to any matter under investigation'; to that end it authorized the Commission to invoke the aid of any court of the United States and directed the circuit courts, 'in case of contumacy or refusal to obey a subpoena issued to any common carrier subject to the provisions of this act, or other person,' to issue an order requiring such common carrier or other person to appear before the Commission and produce books and papers. 24 Stat. 383 (1887). * * *" 366 F. 2d at 470.

The subpoena power is essential for the Commission to fulfill its duty to investigate and to stop violations of the Shipping Act, but the power itself would be a nullity without the ability to obtain judicial enforcement of the subpoenas.

■ There can also be little doubt that the Commission may delegate the authority to seek enforcement of its subpoenas under Section 105(a) of Reorganization Plan No. 7 of 1961, 75 Stat. 840 (1961), as amended, 78 Stat. 425 (1964). Compare Lee v. Federal Maritime Board, 284 F.2d 577 (9th Cir. 1960), where the court upheld subpoenas signed by a hearing examiner under 46 CFR § 502.147, although Section 27 of the Shipping Act requires them to be signed by a member of the Commission.

Here (1) a proceeding under Section 22 of the Shipping Act, 46 U.S.C. § 821, was begun (Ex. A attached to petition); (2) the Commission directed an investigation under Sections 15, 16, 17 and 22

and assigned the matter for hearing before an examiner (Ex. B attached to petition; see also Ex. C) and at that time or later made respondents parties to said proceeding; (3) thereafter the Presiding Examiner, upon application of interested parties and under authority of Rule 10 (g) of the Commission's Rules of Practice and Procedure [1] issued certain subpoenas; (4) certain respondents (New York Terminal Conference, United States Lines and Cunard Steamship) sought to quash such subpoenas served upon them and signed by the Presiding Examiner and the motion was denied (see Ex. C, Ruling on Motion to Quash) and (5) under Rule 10(m), 46 CFR § 502.153, the hearing examiner refused to allow respondents to appeal his ruling to the Commission.

Rule 9(a) of the Federal Maritime Commission's Rules of Practice and Procedure, as amended (46 CFR § 502.131) [2] in no way precludes the procedure taken here.

■ On the basis of the statutes and regulations above mentioned (46 U.S.C. §§ 821, 826, 828 etc.) there is, in my opinion, no formal requirement that, after the order for investigation, the issue of the subpoenas and refusal to comply, the Commission pass a resolution to seek compliance. While an express authorization in some form would be better practice, authorization for the enforcement proceeding is clearly implied in the scheme of statutes and regulations, together with the specific order to initiate the investigation. [3]

---

1. Rule 10(g) of the Commission's Rules of Practice and Procedure, 46 CFR § 502.-147, reads in part as follows:
   "The officer designated to hear a case shall have authority to * * * sign and issue subpenas authorized by law * * *."

2. The Rule is as follows:
   "Where it appears to the presiding officer that the subpoena sought may be unreasonable, oppressive, excessive in scope, or unduly burdensome, he may in his discretion, as a condition precedent to the issuance of the subpoena, require

the person seeking the subpoena to show the general relevance and reasonable scope of the testimony or other evidence sought."

3. This understanding of the attorneys' powers was confirmed by the Commission at a meeting on October 20, 1966, the minutes of which were certified and submitted to the court as Petitioner's Exhibit E. This note is not to be construed, however, as a ruling upon the effect of the purported nunc pro tunc authorization contained in that exhibit.

**232**

## CONCLUSION

The motions to quash are denied and enforcement of the subpoenas will be ordered, except that Item 4 of the subpoenas will be deemed amended by the substitution of the words "payment over" for the word "refund." This meaning is clear from the context.

Settle order on notice.